IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COLE REGISTER, *Individually and on behalf of others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> LAUGHING OUT LOUD RESTAURANT GROUP, LLC, TONY SHAW, and MICHAEL A. MILLER, <br><br> Defendants. | CIVIL ACTION NO. |

# COMPLAINT

## INTRODUCTION

Named Plaintiff Cole Register, by and through the undersigned counsel, brings this complaint for damages and other relief on behalf of himself and others similarly situated against Defendants and states and alleges as follows:

## PARTIES

1. Named Plaintiff, Cole Register, is a resident of Atlanta, Georgia.

2. Defendant Laughing Out Loud Restaurant Group, LLC ("LOLRG") is a domestic Georgia corporation with its principal office address, as recorded with

the Georgia Secretary of State, being 620 Hembree Parkway, Suite 300, Roswell, GA 30076.

3. On information and belief, Defendant Tony Shaw is Chief Executive Officer and co-owner of Defendant LOLRG.

4. On information and belief, Defendant Michael A. Miller is Chief Operating Officer and co-owner of Defendant LOLRG.

5. Defendant Miller is the registered agent for Defendant LOLRG.

6. Defendant LOLRG may be served with the summons and the complaint in this civil action by service upon its registered agent, Defendant Miller, at 620 Hembree Parkway, Suite 300, Roswell, GA 30076.[1]

## JURISDICTION AND VENUE

7. Named Plaintiff, on behalf of himself and others similarly situated, brings this Collective Action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") for failure to pay minimum wage and overtime compensation at the proper rate as required by the FLSA, and, therefore, this Court has original jurisdiction over this case based on 28 U.S.C. § 1331.

---

[1] On the Georgia Secretary of State website, Defendant Miller is listed as the registered agent of Defendant LOLRG and as having the address of 680 Hembree Parkway, Suite 300, Roswell, GA 30076. However, additional research suggests that this address is a typo and Miller's actual address as the Registered Agent of Defendant LOLRG is 620 Hembree Parkway, Suite 300, Roswell, GA 30076.

8. Under 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Georgia because: (1) all of the Defendants reside within the state of Georgia, and at least one Defendant resides within the Northern District of Georgia and (2) a substantial part of the events or omissions giving rise to Named Plaintiff's claims, as described in this complaint, occurred within the Northern District of Georgia.

9. At all relevant times, the Defendants have been and continue to be "employers" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

10. At all relevant times, the Defendants have employed and continue to employ Named Plaintiff and others similarly situated, all of whom engage or are engaged in commerce or in the production of goods for commerce.

11. At all relevant times, on information and belief, the Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

12. Named Plaintiff has consented in writing to be a party to this action pursuant to 29 U.S.C. § 216(b), and, as the case proceeds, it is likely that other individuals will sign consent forms and join this action. Attached as Exhibit A is Named Plaintiff's signed consent form.

## FACTUAL ALLEGATIONS IN SUPPORT OF
## NAMED PLAINTIFF'S CLAIMS ON BEHALF OF HIMSELF
## AND OTHERS SIMILARLY SITUATED

13. Named Plaintiff and others similarly situated are individuals who have been employed by Defendant LOLRG in the restaurants it owns, including but not limited to Arena Tavern and Nacho Daddy's, and have received gratuities for services rendered from customers of those restaurants in the three years prior to the filing of this lawsuit and continuing through the duration of this action ("Tipped Employees").

14. On information and belief, Defendants Shaw and Miller jointly own Defendant LOLRG.

15. On information and belief, Defendant Shaw directly and indirectly controls, determines, and directs the day-to-day operations of Defendant LOLRG and the restaurants it owns, including but not limited to Arena Tavern and Nacho Daddy's. On information and belief, Defendant Shaw directly and indirectly sets Defendant LOLRG and its restaurants' payroll, compensation, scheduling, and other employment policies.

16. On information and belief, Defendant Miller directly and indirectly controls, determines, and directs the day-to-day operations of Defendant LOLRG and the restaurants it owns, including but not limited to Arena Tavern and Nacho

Daddy's. On information and belief, Defendant Shaw directly and indirectly sets Defendant LOLRG and its restaurants' payroll, compensation, scheduling, and other employment policies.

17. On information and belief, Defendants Shaw and Miller are or have been joint employers with Defendant LOLRG of Named Plaintiff and the Tipped Employees for the purposes of the FLSA.

18. Named Plaintiff began his employment with Defendants in or about August 2009. Named Plaintiff left his employment with Defendants in or about April 2010. Named Plaintiff then returned to his employment with Defendants in or about August 2010. Named Plaintiff is currently employed by Defendants.

19. Named Plaintiff is a Server at Arena Tavern, which is a restaurant owned by Defendants. Arena Tavern is located at 2000 Satellite Boulevard, Duluth, GA 30097.

20. On information and belief, Arena Tavern is not incorporated or organized under the laws of the State of Georgia.

21. Defendants also own the restaurant Nacho Daddy's. Nacho Daddy's is located at 3375 Sugarloaf Parkway, Suite 101, Lawrenceville, GA 30044.

22. On information and belief, Nacho Daddy's is not incorporated or organized under the laws of the State of Georgia.

23. For all of the time he has been employed by Defendants, Named Plaintiff has held the position of Server at the Arena Tavern located in Duluth, Georgia.

24. Defendants use a point of sale system in the restaurants they own and jointly operate, including but not limited to Arena Tavern and Nacho Daddy's, to record and track Tipped Employees' sales, tips, and hours worked.

25. On information and belief, the workweek for employees of Defendants' restaurants, including but not limited to Arena Tavern and Nacho Daddy's, runs from Monday through and including the following Sunday.

## COUNT I

### WILLFUL FAILURE TO PAY THE MINIMUM WAGE REQUIRED BY THE FLSA

26. Named Plaintiff and other Tipped Employees receive or received gratuities from customers of Defendants' restaurants for services rendered ("tips").

27. Customers at Defendants' restaurants leave tips for Tipped Employees in the form of both cash tips and credit card tips. These tips are amounts left for Tipped Employees in excess of the amount of the customers' bills.

28. Defendants operate their restaurants such that each Tipped Employee operates as his or her own "bank" during the course of the evening. This means

that each Tipped Employee retains for the duration of his or her shift all of the cash that he or she receives from customers during his or her shift.

29. At the end of a Tipped Employee's shift, a manager or the Tipped Employee prints a receipt from the point of sale computer system that details the Tipped Employee's total sales, including credit card sales and non-credit card sales, for that shift ("Sales Receipt").

30. The Sales Receipt also indicates the total amount of credit card tips received by the Tipped Employee during his or her shift.

31. The Sales Receipt also indicates whether the Tipped Employee is owed cash by Defendant LOLRG or whether the Tipped Employee owes Defendant LOLRG cash.

32. If the Tipped Employee's total credit card tips are more than his or her total non-credit card sales, then Defendant LOLRG owes the Tipped Employee cash, which Defendant LOLRG pays to the Tipped Employee at or near the end of the shift.

33. If the Tipped Employee's total credit card tips are less than his or her total non-credit card sales, then the Tipped Employee owes Defendant LOLRG the difference and must pay the difference to Defendant LOLRG at or near the end of the shift out of the cash collected during the shift.

34. For example, if a Tipped Employee had one customer ("Customer A") with a bill of $100 who left a tip of $15 and paid both the bill and the tip with a credit card and had a second customer ("Customer B") with a bill of $10 who left no tip and paid in cash, the Tipped Employee's nightly sales would be $110.

35. At the end of the shift, the Tipped Employee would have received $15 in tips, all of which came from Customer A in this example.

36. At the end of the shift, the Tipped Employee would have $10 in cash, which is the cash she would have received from Customer B when he paid his bill.

37. Since the Tipped Employee's total credit card tips ($15) are $5 more than the Tipped employee's total non-credit card sales ($10), the Tipped Employee's Sales Receipt would indicate that Defendant LOLRG owed the Tipped Employee $5 in cash.

38. When Defendants' manager "settled up" the Tipped Employee's "bank," the Tipped Employee would receive $5 in cash from Defendant LOLRG. The Tipped Employee would therefore take home $15 in cash, which is the amount of cash equal to her total tips for the night, which in this example includes only the $15 tip received from Customer A and paid by credit card.

39. However, the calculation of whether the Tipped Employee is owed cash by Defendant LOLRG or owes cash to Defendant LOLRG at the end of the

shift is not performed in such a way so as to ensure that the Tipped Employee retains all tips left for him or her by his or her customers.

40.     Defendants maintain a practice and a policy that makes "walkouts" and other cash shortages the responsibility of the Tipped Employee.

41.     Therefore, if the Tipped Employee has a customer or customers who do not pay their bill in full, the unpaid amount of the customer's bill is deducted from the Tipped Employee's tips at the end of the night when the determination of whether the Tipped Employee owes Defendant LOLRG cash or Defendant LOLRG owes the Tipped Employee cash.

42.     For example, if a Tipped Employee had one customer ("Customer C") with a bill of $100 who left a tip of $15 and paid both the bill and the tip with a credit card and had a second customer ("Customer D") with a bill of $10 who walked out without paying the bill, the Tipped Employee's nightly sales would be $110.

43.     At the end of the shift, the Tipped Employee would have received $15 in tips, all of which came from Customer C in this example.

44.     Since the Tipped Employee's total credit card tips ($15) is $5 more than the Tipped employee's total non-credit card sales ($10), the Tipped

Employee's Sales Receipt would indicate that Defendant LOLRG owed the Tipped Employee $5 in cash.

45. At the end of the shift, however, the Tipped Employee would not have received any cash during her shift because Customer D did not pay his bill.

46. When Defendants' manager "settled up" the Tipped Employee's "bank," the Tipped Employee would receive $5 in cash. The Tipped Employee would therefore take home $5 in cash, which is $10 less than her total tips received for the night, which in this example includes only the $15 tip received from Customer C and paid by credit card.

47. Thus, in this example, the Tipped Employee would not be allowed to retain all of her tips.

48. Named Plaintiff has been subject to this policy and practice of Defendants and has not been allowed to retain all of his tips.

49. Count I of this complaint arises from Defendants' willful violation of the FLSA for failing to pay the minimum wage to Tipped Employees, including Named Plaintiff, for all hours worked and to which they were entitled.

50. The minimum wage provisions of the FLSA apply to the Defendants and protect the Tipped Employees, including Named Plaintiff.

51. Defendants were not and are not entitled to avail themselves of the federal tipped minimum direct wage rate under the FLSA because Defendants failed to properly notify the Tipped Employees, including Named Plaintiff, of Defendants' intention to take a tip credit against the required minimum wage.

52. Defendants were not and are not entitled to avail themselves of the federal tipped minimum direct wage rate under the FLSA because Defendants did not allow the Tipped Employees, including Named Plaintiff, to retain all of their tips.

53. Since Defendants were not and are not entitled to avail themselves of the federal tipped minimum direct wage rate, the Tipped Employees who worked for Defendants at any time from July 24, 2008, through July 23, 2009, were entitled to be compensated at the then current minimum wage rate of $6.55 per hour.

54. Since Defendants were not and are not entitled to avail themselves of the federal tipped minimum direct wage rate, the Tipped Employees who worked for Defendants at any time from July 24, 2009, through and including the present and ongoing, were and are entitled to be compensated at the current minimum wage rate of $7.25 per hour.

55. Defendants did not pay the Tipped Employees, including Named Plaintiff, the required minimum wage for all hours worked per workweek, including hours worked off-the-clock and hours worked on-the-clock.

56. Defendants, pursuant to their policies and practices, willfully refused and willfully failed to pay the minimum wage required by the FLSA to the Tipped Employees, including Named Plaintiff.

57. By failing to properly compensate the Tipped Employees, including Named Plaintiff, at the minimum wage required by the FLSA, Defendants violated and continue to violate the Tipped Employees' statutory rights under the FLSA.

58. Defendants' failure to pay the minimum wage to the Tipped Employees, including Named Plaintiff, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

59. Named Plaintiff, on behalf of himself and the Tipped Employees, seeks damages in an amount of the Tipped Employees' unpaid wages, liquidated damages as provided under the FLSA, interest, and any such other legal and equitable relief as the Court deems proper.

60. Named Plaintiff, on behalf of himself and the Tipped Employees, seeks recovery of attorney fees and costs to be paid by Defendants as provided by the FLSA.

## COUNT II

## WILLFUL FAILURE TO PAY ALL HOURS WORKED IN EXCESS OF 40 HOURS PER WEEK AT THE REQUIRED OVERTIME RATE IN VIOLATION OF THE FLSA

61. Tipped Employees, including Named Plaintiff, record or recorded their hours worked using the point of sale system.

62. Upon arriving to work, Tipped Employees, including Named Plaintiff, clock in for their shift by logging into the point of sale computer system.

63. The point of sale computer system records a Tipped Employee's shift start time to the minute.

64. When Tipped Employees, including Named Plaintiff, have completed their shift, the Tipped Employees clock out for their shift by logging out of the point of sale computer system.

65. The point of sale computer system records a Tipped Employee's shift end time to the minute.

66. Each time a Tipped Employee clocks out at the end of a shift, a receipt is printed that shows the Tipped Employee's shift start time, shift stop time, total time worked on the shift, and total time worked for that workweek ("Time Receipt"). By way of example, a true and correct copy of Named Plaintiff's Time Receipt for the workweek beginning Monday, October 11, 2010, and running

through and including Sunday, October 17, 2010, ("First Sample Workweek") is attached as Exhibit B.  By way of further example, a true and correct copy of Named Plaintiff's Time Receipt for the workweek beginning Monday, October 18, 2010, and running through and including Sunday, October 24, 2010, ("Second Sample Workweek") is attached as Exhibit C.  Collectively, Exhibits B and C will be referred to as "Named Plaintiff's Sample Time Receipts."

67. Defendants have a policy and practice of regularly not paying Tipped Employees for hours worked in excess of 40 hours in a workweek at the required premium overtime rate.

68. More specifically, Defendants have a policy and practice of regularly not paying Tipped Employees at all for hours worked in excess of 40 hours in a workweek.

69. Named Plaintiff has been subject to these policies and practices of Defendants and has not been properly paid for all hours he has worked in excess of 40 hours in a workweek.

70. For example, Named Plaintiff's Sample Time Receipts show that Named Plaintiff worked 49.45 hours in his First Sample Workweek and that Named Plaintiff worked 43.28 hours in his Second Sample Workweek.  *See* Exhibits B and C.

71. Thus for the First Sample Workweek and the Second Sample Workweek, Named Plaintiff worked and recorded 92.73 hours, which includes 9.45 hours worked in excess of 40 hours in the First Sample Workweek and 3.28 hours worked in excess of 40 hours in the Second Sample Workweek, for a total of 12.73 overtime hours during the pay period beginning October 11, 2010, and running through and including October 24, 2010 ("October 11 through October 24 Pay Period").

72. However, Named Plaintiff was paid for only 79.73 hours and was paid for 0.00 overtime hours for the October 11 through October 24 Pay Period. A true and correct copy of Named Plaintiff's Statement of Earnings for the October 11 through October 24 Pay Period is attached as Exhibit D.

73. Defendants failed to maintain accurate records of Named Plaintiff's actual work hours.

74. Therefore, Defendants failed to comply with the record keeping requirements of the FLSA.

75. Defendants regularly, frequently, and repeatedly failed to pay the Tipped Employees, including Named Plaintiff, at all for hours worked in excess of 40 hours per week in a workweek, and this failure to pay for hours worked in excess of 40 hours in a workweek is in violation of the FLSA.

76. Defendants regularly, frequently, and repeatedly failed to pay the Tipped Employees, including Named Plaintiff, for hours worked in excess of 40 hours per week in a workweek at the premium overtime rate required by the FLSA.

77. Count II arises from Defendants' willful violation of the FLSA for failure to pay overtime compensation at the appropriate overtime premium rate for all hours worked in excess of 40 in a workweek to the Tipped Employees, including Named Plaintiff, to which they were entitled as required by the FLSA.

78. The overtime provisions of the FLSA apply to Defendants and protect Named Plaintiff and the Tipped Employees.

79. Defendants, pursuant to their policies and practices, willfully refused and failed to pay the Tipped Employees at the premium overtime rate for all hours worked in excess of 40 hours per week.

80. Defendants' conduct as alleged constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

81. Named Plaintiff, on behalf of himself and the Tipped Employees, seeks damages in the amount of their unpaid overtime wages, liquidated damages as provided under the FLSA, interest, and such other legal and equitable relief as the Court deems proper.

82. Named Plaintiff, on behalf of himself and the Tipped Employees, seeks recovery of attorney fees and costs to be paid by Defendants as provided by the FLSA.

## **PRAYER FOR RELIEF**

Based on the allegations set forth in this complaint and the evidence as it is developed in this case, Named Plaintiff, on behalf of himself and others similarly situated, respectfully prays that:

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action as to each of the claims in this complaint;
- the Court enter judgment against Defendants that their violations of the FLSA were willful;
- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action and award them their unpaid back wages;
- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action and award them an amount equal to their unpaid wages as liquidated damages as provided for under the FLSA;

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action and award them prejudgment interest;
- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action and award them all costs and attorney fees incurred in prosecuting these claims as provided for under the FLSA; and
- the Court grant Named Plaintiff and all others similarly situated who opt into this action all other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury.

Dated:  November 23, 2010

        Respectfully submitted,

        s/G. Blake Andrews
        Gary Blaylock "Blake" Andrews, Jr.
        Georgia Bar No. 019375
        Blake Andrews Law Firm, LLC
        483 Moreland Ave N.E.
        Suite 3
        Atlanta, GA 30307
        Telephone: 770-828-6225
        Facsimile: 866-828-6882
        blake@blakeandrewslaw.com

        AND

        Evan L. Kaine
        Georgia Bar No. 406036
        Kaine Law, LLC
        3355 Lenox Road
        Suite 850
        Telephone: 404-214-2001
        Facsimile: 404-214-1774
        ekaine@elawpractice.com